CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 25 2013

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ANTONIO LAMONT ALLISON, | ) | CASE NO. 7:12CV00601 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | |
| | ) | |
| JONATHAN W. CARICO, et al., | ) | By: James C. Turk |
| | ) | Senior United States District Judge |
| Defendants. | ) | |

Antonio Lamont Allison, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that certain defendant prison officials deliberately contaminated his food, verbally abused and threatened him, retaliated against him, and failed to protect him against threats from other prison inmates, in violation of his constitutional rights. Allison identifies as defendants Jonathan W. Carico, and (by last name only) Dixon, Gill, Kelly, Lawson, Marcum, Roberts, and Stidham.[1] After reviewing Allison's submissions, the Court summarily dismisses the action under 28 U.S.C. § 1915A(b)(1) for failure to state a claim.[2]

I

Allison is an inmate currently confined in the segregation unit at Wallens Ridge State Prison. His amended complaint consists of three separate filings, all of which the Court has considered. His submissions do not delineate separate claims; instead, they employ more of a journal-type format, separating allegations by date. Because many of his allegations involve the

---

[1] Allison also discusses other officers not expressly named as defendants, including Castle, Coleman, Christopher B. King, McCall, Walter G. Swiney, and Tabor.

[2] In light of the Court's conclusion that Allison has failed to state a claim against any guards or prison officials, the Court does not attempt to determine which of Allison's claims are being brought against whom.

same types of events on various dates, the Court will group them by the type of allegation and discuss each type in turn. Allison alleges the following in support of his claims.

### A. Food Contamination

Allison's first group of allegations states that one or more of the defendant prison officials ("defendants") deliberately contaminated his food tray. On numerous occasions beginning on December 10, 2012, Dixon had tobacco product in his mouth while serving coffee to Allison, and Allison smelled tobacco juice in the rice of his Common Fare dinner tray, which remained separate from the other inmates' trays. ECF No. 24 at 18, 24, 54–55, 57. "It's a continue[d] practice for them to have [Allison's] trays separate from everyone [else's] trays." ECF No. 24 at 24. On another day,

> [his] tomato had something on it [that] looked like a big pile of cold someone had spit out of their mouth on it, as well as [his] cucumbers. The bottom slice of bread was turned a different way and was pressed down like someone had [taken] their hand and pressed down on it as if they [were] trying to soak something up.

ECF No. 24 at 59–60. Because he believed his food had been contaminated, Allison sometimes chose not to eat his meals. ECF No. 24 at 7–8. In addition, officers often did not dispense coffee for Allison in his presence as they did for the other inmates. ECF No. 24 at 38, 59. Allison began to refuse the coffee and sometimes the cup of juice because the guards did not dispense the beverage in front of him. ECF No. 24 at 59.

According to Allison, the officers also bragged to each other about spitting in Allison's food trays. ECF No. 24 at 20, 54, 56, 69. For example, Allison claims that Dixon said that "he was going to have [Allison] scared to eat." ECF No. 24 at 54. The officers talked about his food tray often, as well. ECF No. 24 at 74. For instance, Officer Castle told the control booth that "he was going to get some 'mercury' and put [it] in a common fare tray and put [Allison's] name on it." ECF No. 24 at 69. See also ECF No. 24 at 20.

2

## B. Verbal Abuse

Allison also alleges that certain prison officers verbally abused and threatened him. He claims that almost daily, the defendant prison officers identified and referred to him as "hot mother fucker," "snitching bitch," "sex offender," "child molester," "homosexual," and variations of those phrases. E.g., ECF No. 24 at 3, 6–8, 10, 12, 14, 15, 16, 19–20, 25, 42, 58, 61, 66. On two instances, officers called Allison a "nigger." ECF No. 24 at 45, 74. Besides calling Allison these names, the officers referred to Allison in this manner when speaking to each other and to other offenders. E.g., ECF No. 24 at 3, 6–8, 10, 12, 14, 15, 16, 19–20, 25, 42, 58, 61. Allison alleged that defendant prison officers even created a name-calling recording to play on the monitor in the interview room. ECF No. 28 at 19.

Further, officers verbally threatened Allison. For instance, on multiple occasions, officers threatened to stab Allison, ECF No. 24 at 21, 58, 65, or expressed their wish that other offenders would stab or beat Allison when the officers bring him to the yard. ECF No. 24 at 6, 23–24, 61. On August 31, 2012, Marcum allegedly hollered in reference to Allison that "the 'snitching bitch' . . . needs to die . . . ." ECF No. 24 at 7. Another prison guard, Tabor, told offenders on September 6, 2012, that Allison "won't come out [of] his cell for a shower anymore because he know[s] I want to beat his 'snitching ass.'" ECF No. 24 at 7.

## C. Medical attention

Allison also makes several allegations related to a finger injury he received in the shower on November 26, 2012. On that date, Allison showered in the D-6 segregation unit and cut his finger on the sheet metal that runs down the sides of the shower door. ECF No. 24 at 14. According to Allison, the sheet metal "has sharp sides exposed." ECF No. 24 at 14. Allison advised Dixon of the sharp sheet metal, as well as Allison's bleeding finger, and Dixon said he

would contact medical. ECF No. 24 at 14. Two other officers, McCall and Stidham, said, "fuck that 'hot mother fucker,'" referring to Allison, ECF No. 24 at 14–15, and McCall commented that the officers needed to put Allison on fifteen minute watch because he had tried to kill himself. ECF No. 24 at 15. No medical personnel saw Allison for his finger injured by the "unsanitary sheet metal," ECF No. 24 at 15, although Allison makes no further mention of his finger and does not allege that he suffered any further injury.

### D. Retaliation and Failure to Protect

Allison's next group of allegations involves vague claims that officers retaliated against him because they believed Allison submitted request forms against them. According to Allison, other offenders obtained his information, and used it to submit request forms, which provoked the officers to be hostile toward him. ECF No. 24 at 3–4, 9, 12, 28. Allison first claims that this abuse of his information has not been investigated. ECF No. 24 at 5. He also alleges retaliation, largely in the form of officers repeatedly calling Allison names, such as "hot mother fucker" and "snitching bitch." ECF No. 24 at 6, 12, 17. For instance, when Allison was transferred to another segregation unit, Officer Tabor told Allison:

> you know why you are moving don't you, I said no, he said because of the paperwork on Marcum, and he did not think Marcum did that. I reveal[ed] to him that every day something is being wrote with my information on it and I'm not writing it, but being accused of it as well as being retaliate[d] against, as well as being called "Hot Mother Fucker," "snitching bitch," and sex offender, as well as being threaten[ed] to be stabbed up by other prisoners in the future.

ECF No. 24 at 13. In addition to name-calling, Allison alleges he lost phone privileges because of his informal complaints about the defendant prison officers. ECF No. 24 at 64. At one point, Allison alleges that a guard refused to take his grievance form. ECF No. 24 at 41.

As a result of the officers labeling Allison a "snitch" in front of and to other offenders, Allison contends he is now in danger from other inmates and that the "Bloods" have a hit on him. ECF No. 24 at 5. Allison notes that inmates labeled as snitches have historically been violently attacked. ECF No. 25-1 at 1. Incited by officers' name-calling and verbal threats to Allison, other offenders have threatened him, too. ECF No. 24 at 9–10, 14–16, 28, 35, 61. Although he is in segregation, Allison feels that the officers have failed to protect him from the threat on his life. Rather, Allison alleges the officers find the threats humorous. ECF No. 24 at 6, 14, 35.

Allison's complaint does not seek money damages. Instead, he asks for injunctive relief in the form of an order directing officials to place him into protective custody and to provide him with uncontaminated meals. ECF No. 25-1 at 2.

## II

The court shall dismiss any action or claim filed by a prisoner against a governmental officer if the court determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1). To state a claim in any federal civil action, the plaintiff must assert factual allegations that raise a right to relief that is "plausible on its face," not one that is speculative or merely "conceivable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a court must accept the material facts alleged in the complaint as true, statements of bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011) (citation omitted). Stating a cause of action under § 1983 requires a plaintiff to establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this

deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

### A. Food Contamination

The Court construes Allison's complaints regarding his food as a claim challenging the conditions of his confinement. An appropriate claim for relief for unconstitutional conditions of confinement requires a prisoner to "produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions," or "demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (citation omitted). "[T]he Eighth Amendment protects against sufficiently imminent dangers as well as current unnecessary and wanton infliction of pain and suffering." Helling v. McKinney, 509 U.S. 25, 34 (1993). Here, Allison does not allege any personal harm, current or sufficiently imminent, resulting from the food contaminated by the defendant prison officers. Although he alleges that he occasionally has refused a meal, coffee, or juice, Allison does not allege that he has been sickened, malnourished, or even made ill in any way from the food. The Court thus summarily dismisses Allison's § 1983 claims regarding food contamination, pursuant to § 1915A(b)(1), for failure to state a claim.

### B. Verbal Abuse

To the extent Allison alleges that any defendant threatened him, but fails to allege that such defendant took steps to carry out the threat, Allison fails to state a claim. (See, e.g., Wilson v. McKellar, 254 F. App'x 960, 961 (4th Cir. 2007) (per curiam) (unpublished); Carter v. Morris, 164 F.3d 215, 219 n.3 (4th Cir. 1999). "Not every push or shove" violates a person's constitutional rights, and mere words, however violent, do not amount to an assault. Johnson v.

Glick, 481 F.2d 1028, 1033 & 1033 n.7 (2d Cir. 1973), overruled on other grounds, Graham v. Conner, 490 U.S. 386, 397 (1989). Nor does the Constitution "protect against all intrusions on one's peace of mind." Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991), abrogated on other grounds by Cnty. of Sacramento v. Lewis, 523 U.S. 833 (1998)). A guard's verbal harassment or idle threats to an inmate, even if they cause an inmate fear or emotional anxiety, do not constitute an invasion of any identified liberty interest. Id.; Emmons v. McLaughlin, 874 F.2d 351, 354 (6th Cir. 1989) (verbal threats causing fear for plaintiff's life not an infringement of a constitutional right); Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) (calling an inmate an obscene name did not violate constitutional rights); Lamar v. Steele, 698 F.2d 1286, 1286 (5th Cir. 1983) ("Threats alone are not enough. A section 1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation."); Ellingburg v. Lucas, 518 F.2d 1196, 1197 (8th Cir. 1975) (defamation does not implicate any constitutionally protected right); Keyes v. City of Albany, 594 F. Supp. 1147 (N.D.N.Y. 1984) ("[T]he use of vile and abusive language [including racial epithets], no matter how abhorrent or reprehensible, cannot form the basis for a §1983 claim."); Morrison v. Martin, 755 F. Supp. 683, 687 (E.D.N.C. 1990), aff'd 917 F.2d 1302 (4th Cir.1990) (finding that the threatening language of a prison official, even if true, does not amount to constitutional violation). Because the officers' alleged verbal threats alone do not rise to the level of a constitutional violation, the Court summarily dismisses Allison's claims concerning verbal abuse under § 1915A for failure to state a claim.

**C. Medical attention**

A prison official's "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Estelle v. Gamble, 429 U.S. 97, 105 (1976) (emphasis added).[3]

---

[3] The Court emphasized that "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only

A sufficiently serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008), and a prison official is "deliberately indifferent" only if he "knows of and disregards [or responds unreasonably to] an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Crediting his allegations as true, Allison showed his bleeding finger to defendant prison guard Dixon on November 26, 2012, but the fact that Allison never again mentions his finger in over eighty pages of his complaint belies any claim that his injury was serious. Moreover, Allison does not allege that his finger became worse, infected, or required medical attention. Thus, Allison fails to demonstrate deliberate indifference to any serious medical need, and, the Court summarily dismisses Allison's claims concerning medical care under § 1915A for failure to state a claim.

**D. Retaliation**

Allison generally alleges that defendant prison guards retaliated against him for filing informal complaints and grievances. Prison officials may not retaliate against an inmate for exercising his constitutional right to access the court. Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978). On the other hand, to state a § 1983 claim here, Allison must present more than conclusory allegations of retaliation. Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). He must allege facts showing that his exercise of his constitutional right was a substantial factor motivating the retaliatory action. See, e.g., Am. Civil Liberties Union v. Wicomico Cnty., 999 F.2d 780, 785 (4th Cir. 1993) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977) (requiring plaintiff to show "a causal relationship between the protected

---

such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." Estelle, 429 U.S. at 106.

expression and the retaliatory action"); Wagner v. Wheeler, 13 F.3d 86, 90–91 (4th Cir. 1993) (same). Mere "temporal proximity" between the inmate's protected activity and the official's allegedly retaliatory action "is simply too slender a reed on which to rest" a § 1983 retaliation claim. Wagner, 13 F.3d at 91. In addition to showing causation, the inmate must also allege facts indicating that, as a result of the retaliatory action, he suffered some adverse impact on the continued exercise of his constitutional rights. Wicomico Cnty., 999 F.2d at 786 (finding that mere inconvenience in exercise of constitutional rights not adverse enough to constitute actionable retaliation).

In this case, Allison fails to show that the defendants' retaliation occurred in response to the exercise of a right emanating from the Constitution. Allison alleges that the guards retaliated—with name-calling, lost phone privileges, and sometimes refusing to accept his grievance forms—when Allison, and allegedly other offenders using his information, wrote and submitted informal complaints and grievances. Access to grievance procedures, however, is not a constitutional right. Adams, 40 F.3d at 75 (stating that "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state"). Therefore, because Allison fails to allege facts demonstrating that the guards' retaliation occurred in response to the exercise of a constitutional right, the Court summarily dismisses his retaliation claims under § 1915A.

### E. Failure to Protect

Finally, Allison alleges that defendants are failing to protect him from other inmates. The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). To make a valid Eighth Amendment claim based on prison officials' failure to protect him against inmate assault,

a prisoner must state facts demonstrating that he faces a substantial risk of serious harm and that officers are acting with deliberate indifference to that risk. Id. at 828. A prison official shows deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety." Id. In other words, "the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and [the officers] could avert the danger easily yet they fail to do so." Case v. Ahitow, 301 F.3d 605, 607 (7th Cir. 2002). A prison official's accidental or inadvertent failure to protect inmates from harm by other prisoners is not sufficient to state an Eighth Amendment violation. Farmer, 511 U.S. at 840.

Allison has allegedly told officers that he feels threatened and believes other inmates have put a "hit" on him. Critically, however, Alison remains in segregation, where he has no direct contact with other inmates. Therefore, while Allison may feel threatened, he does not state facts indicating how he actually faces any serious danger of harm from other inmates. Because he thus fails to satisfy the serious risk of harm element of the Farmer standard, the Court summarily dismisses his failure to protect claims under § 1915A.

### III

For the foregoing reasons, all of Allison's claims are subject to summary dismissal. Accordingly, the Court summarily dismisses his complaint without prejudice under § 1915A(b)(1) for failure to state a claim. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to plaintiff.

ENTER: This 25th day of July, 2013.

_____
Senior United States District Judge